Joseph V. RODRIQUEZ, Frank J. Martinez, Clarence A. Weigand, Susie Reyes, Audrey R. McConnell, and Eli Taylor, Plaintiffs,

v.

BAR–S FOOD COMPANY, Cudahy Company, and General Host Corporation, Defendants.

Civ. A. No. 81–K–2153.

United States District Court, D. Colorado.

June 1, 1982.

Martin D. Buckley, Hornbein, MacDonald, Fattor & Buckley, Denver, Colo., for plaintiffs.

E. Lee Dale, Sherman & Howard, Denver, Colo., for Cudahy & General Host.

William G. Imig, Owen C. Rouse, Ireland, Stapleton & Pryor, Denver, Colo., and Warren C. Ogden, Josephine B. Vestal, Williams, Lanza, Kastner & Gibbs, Mercer Island, Wash., for Bar-S.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This dispute arises from a collective bargaining agreement between the United Food and Commercial Workers International Union, AFL–CIO, of which the plaintiffs are members of Local P–85, and defendant Cudahy Company. The complaint, which was filed in Colorado state court, alleges that defendant General Host Corporation and its wholly-owned subsidiary, Cudahy, conspired improperly to interfere with the collective bargaining agreement of which the plaintiffs are third-party beneficiaries. The complaint alleges that Cudahy and General Host, in furtherance of this alleged conspiracy, incorporated defendant Bar-S Food Company in order to allow Cudahy to renege its agreement with the union and to allow Bar-S to take over Cudahy's Denver operations without any substantial changes other than replacing the plaintiffs by other, lower paid employees. The plaintiffs bring this action on behalf of themselves and all others similarly situated.[1] The defendants removed the case to this court. Subject-matter jurisdiction is based solely on diversity of citizenship, 28 U.S.C. section 1332.

There have been two other proceedings involving the present controversy. On August 22, 1981 the union filed a charge against Cudahy with the National Labor Relations Board, charging that the defendants were engaging in a scheme to repudiate the collective bargaining agreement, in violation of section 8(a)(1), (3) and (5) of the National Labor Relations Act, 29 U.S.C. section 158(a)(1), (3) and (5). On October 13, 1981 an acting regional director of the

---

1. The defendants argue that this case should not be certified as a class action. Because the plaintiffs have not yet moved to have the class certified, this argument is premature. F.R. Civ.P. 23(c)(1) requires me to determine "(a)s soon as practicable after the commencement of the action" whether it should be maintained as a class action. However, the plaintiffs first should be given an opportunity to conduct any discovery relevant to this issue. See C. Wright & A. Miller, *Federal Practice and Procedure* section 1785 (1972). After this discovery is completed the plaintiffs may move for class certification.

NLRB, after investigating the charge, refused to file a complaint. On administrative appeal, the NLRB Office of the General Counsel affirmed this decision on April 8, 1982. Both offices found that the transfer of operations from Cudahy to Bar-S was legitimate, and was not a violation of the National Labor Relations Act.[2]

On August 27, 1981 the union filed a complaint in this court against Cudahy, seeking a temporary restraining order and injunction barring the Cudahy to Bar-S transfer. After Bar-S intervened in the case, Judge Finesilver denied the motion for a temporary restraining order, and then, upon the plaintiff's request, dismissed the case, pursuant to F.R.Civ.P. 41(a)(1). *United Food and Commercial Workers, Local P-85 v. Cudahy Co.*, Civil Action No. 81-F-1525 (D.Colo. Aug. 27, 1981 and Nov. 6, 1981).

The defendants all have moved to dismiss the present case. They argue that this court lacks subject-matter jurisdiction, because of the exclusive jurisdiction of the NLRB and because of the plaintiffs failure to exhaust contractual remedies, and that the complaint fails to state a claim. I grant the motion to dismiss for lack of subject-matter jurisdiction as applied to defendant Cudahy and deny it as to the other two defendants. I grant the motion to dismiss for failure to state a claim in part and deny it in part.

## I. SUBJECT–MATTER JURISDICTION

### A. EXCLUSIVE NLRB JURISDICTION

■ Because subject-matter jurisdiction in this case is based solely on diversity of citizenship, this court's jurisdiction is no greater than that of the state courts. See *Guaranty Trust Co. v. York*, 326 U.S. 99, 108–09, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945). Accordingly, I must determine whether state courts would have jurisdic-

tion to hear this case, or whether the controversy is one over which the National Labor Relations Board has exclusive jurisdiction.[3]

Ever since congress enacted the National Labor Relations Act in 1935 and amended it with the Labor Management Relations Act in 1947, the U. S. Supreme Court has grappled with the problem of state court jurisdiction in labor cases. As the court noted in *Garner v. Teamsters, Local 776*, 346 U.S. 485, 488, 74 S.Ct. 161, 98 L.Ed. 228 (1953):

> The national Labor Management Relations Act, as we have pointed out, leaves much to the states, though Congress has refrained from telling us how much.

(footnote omitted.) In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the court stated general preemption rules, both for cases clearly subject to sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. sections 157, 158, and for cases that might be covered by those statutes:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by section 7 of the National Labor Relations Act, or constitute an unfair labor practice under section 8, due regard for the federal enactment requires that state jurisdiction must yield. . . .
>
> At times it has not been clear whether the particular activity regulated by the States was governed by section 7 or section 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. . . .
>
> . . . When an activity is arguably subject to section 7 or section 8 of the Act, the States as well as the federal courts must

---

2. Although Bar-S invested only $500,000 and obtained a third-party loan for the balance of the $28,500,000 purchase price, the Office of General Counsel found the purchase to be a "legitimate, recognized form of leveraged buyout."

3. The NLRB decision not to exercise its jurisdiction in the present case does not enlarge the state courts' (and thus this court's) jurisdiction. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245–46, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959).

defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

*Id.* at 244–45, 79 S.Ct. at 779.

The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy.

*Id.* at 246, 79 S.Ct. at 780 (footnote omitted).

Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme.

*Id.* at 247, 79 S.Ct. at 780 (citation omitted).

Although the "arguably subject to" language of *Garmon* might infer a relatively broad scope of federal preemption, later Supreme Court cases have made it clear that the scope of preemption is actually somewhat narrower. In *Farmer v. United Brotherhood of Carpenters, Local 25,* 430 U.S. 290, 300–01, 97 S.Ct. 1056, 1063–64, 51 L.Ed.2d 338 (1977), the court summarized the case law on NLRB preemption:

... the cases reflect a balanced inquiry into such factors as the nature of the federal and state interests in regulation and the potential for interference with federal regulation.... our cases 'demonstrate that the decision to pre-empt federal and state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies of concurrent judicial and administrative remedies.'

(footnote and citation omitted.) One year later, in *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 197, 98 S.Ct. 1745, 1757, 56 L.Ed.2d 209 (1978), the court attempted to state a general rule on preemption in labor cases:

The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general applicability but whether the controversy presented to the state court is identical to ... or different from ... that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the Garmon doctrine was designed to avoid.

(footnote omitted.)[4]

■■■ Although the latter quote attempts to state a general rule, it is often difficult to determine whether a particular controversy is identical to or different from one that could have been presented to the NLRB. It is thus necessary to examine the facts of past cases in order to delineate better the doctrine. For example, a state court may not hear a tort claim alleging that a union's peaceful picketing violates state law where the challenged activity is a labor practice within the scope of sections 7 and 8 of the National Labor Relations Act. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245–48, 79 S.Ct. 773, 779–81, 3 L.Ed.2d 775 (1959). On the other hand, a state court may hear a complaint seeking to enjoin a union's peaceful picketing if the dispute mainly involves the state's trespass laws and if the risk of interference with the federal scheme is small. *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. at 190–208, 98 S.Ct. at 1754–63. Likewise, a state court may not hear a union member's claim that his union excluded him in violation of a union security clause, because of the deep involvement of federal labor law. *Amalgamated Association of Street Coach Employees v. Lockridge,* 403 U.S. 274, 291–97, 91 S.Ct. 1909, 1920–23, 29

---

4. The *Sears* opinion noted that the danger of state interference was greater if state law prohibited activity that was arguably *protected* by federal law. 436 U.S. at 199–203, 98 S.Ct. at

1758–60. The defendants have not asserted that the "arguably protected" branch of the opinion is applicable in the present case.

L.Ed.2d 473 (1971). A state court may, however, hear a wrongful-exclusion case between a member and his union if the claim involves only state law. *International Association of Machinists v. Gonzales*, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958). The Supreme Court has also recognized the state courts may hear various tort claims that are traditionally matters of state law, where the risk of interference with the federal regulatory scheme is minimal. See, e.g., *Linn v. United Plant Guard Workers, Local 114*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (libel); *Farmers v. United Brotherhood of Carpenters*, 430 U.S. at 301–06, 97 S.Ct. at 1064, 1066 (intentional infliction of emotional distress); *UAW v. Russell*, 356 U.S. 634, 640–46, 78 S.Ct. 932, 935–39, 2 L.Ed.2d 1030 (1958) (malicious interference with lawful occupation); *United Construction Workers v. Laburnum Construction Corp.*, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954); *Youngdahl v. Rainfair, Inc.*, 355 U.S. 131, 139–40, 78 S.Ct. 206, 211–12, 2 L.Ed.2d 151 (1957) (labor-related violence and threats of violence).

The defendants cite two Supreme Court cases which considered a union member's employment relations.[5] Both, however, were disputes between a worker and a union, and neither explicitly involved the tort of intentional interference with contractual relations. *Local 100, United Association of Journeymen v. Borden*, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963); *Local No. 207, International Association of Iron Workers v. Perko*, 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646 (1963). While the court held in both of these cases that state-court action was preempted, neither is directly applicable in the present case. Both cases involved worker-union disputes that were clearly governed by sections 7 and 8 of the National Labor Relations Act. In contrast, the disputes in the present case are not clearly either within or outside of the scope of the federal labor statutes.

The parties also argue whether *Contract Maintenance Co. v. Local 105, Building Service Employees International Union*, 160 Colo. 190, 415 P.2d 855 (1966), is relevant here. Of course, state court decisions on questions of federal law are not controlling on this court, but are entitled to respectful consideration. However, this case is not applicable here. It involved two unions who picketed a company, attempting to force it to stop doing business with the plaintiff. The court found that this was a labor dispute arguably within the NLRB's jurisdiction and therefore the state law was preempted. It is less clear whether the dispute in the present case is arguably within the NLRB's jurisdiction because it involves a corporate sale.

The plaintiffs rely on *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962), in support of their argument that this court has jurisdiction to hear their complaint. This case held that both state and federal courts have jurisdiction to hear suits for violation of collective bargaining agreements under section 301(a) of the Labor Management Relations Act, 29 U.S.C. section 185(a). The plaintiffs argue, without citing any authority, that

there can be no valid distinction between an action for breach of contract and an action for tortious interference with a contract,

and therefore this court has jurisdiction to hear the present dispute. This argument is without merit. Section 301(a) explicitly provides federal courts with jurisdiction to hear "(s)uits for violation of contracts between an employer and a labor organization..." The *Courtney* case held that this jurisdiction also extended to state courts. The court concluded that congress, in enacting this statute, intended to leave "enforcement of collective agreements 'to the usual processes of the law,'" rather than to the exclusive jurisdiction of the NLRB. *Id.* at 513, 82 S.Ct. at 525. There is no indication, however, that congress intended this rule to

---

**5.** The defendants also argue that *Ex Parte George*, 371 U.S. 72, 83 S.Ct. 178, 9 L.Ed.2d 133 (1962), is "directly on point." So far as I can tell, this case actually has nothing to do with tortious interference of contractual relations.

apply also to suits for tortious interference with contract. I will not expand the exception to the NLRB's exclusive jurisdiction beyond its scope as defined by congress.

Because there are no controlling cases directly on point, I will apply the general principles of NLRB preemption set forth by the Supreme Court. There are different considerations for each defendant, so I will consider each separately.[6]

The claim that the plaintiffs' union filed with the NLRB charged that defendant Cudahy was about to engage in an unfair labor practice by selling its Denver operations to Bar-S. By considering the merits of this charge, the NLRB implicitly held that the charge was within its jurisdiction. Because the NLRB had the power to hear this grievance, it also could issue its own complaint, and, if necessary, seek a preliminary injunction to prevent irreparable injury while the case was being considered. See *Garner v. Teamsters, Local 776*, 346 U.S. 485, 489, 74 S.Ct. 161, 165, 98 L.Ed. 228 (1953).

■ Although the plaintiffs have eloquently pleaded and argued that the disputes in the present case are different from those that were before the NLRB, I am not persuaded. Both disputes stem from the same act—the sale by Cudahy. While the remedies sought are different in form, both seek to compensate the same wrong. Before the NLRB, the union sought reinstatement of the Union-Cudahy agreement; before this court the plaintiffs seek the damages that were caused when Cudahy terminated them. Because both of these remedies bear on the same activity, there would be an imminent danger of conflict if the courts also heard the dispute. See *id.* at 498–99, 74 S.Ct. at 169–70. I therefore conclude that the dispute between the plaintiffs and defendant Cudahy is arguably within the scope of the NLRB's exclusive jurisdiction and therefore is outside of this court's diversity jurisdiction.

In determining whether to assert jurisdiction over a parent corporation for the labor activities of its subsidiary, the NLRB has focused on the degree of control that the parent exerts over the subsidiary's labor policies. For example, in *Harry M. Stevens, Inc.*, 169 N.L.R.B. 806, 807 (1968), the board held:

> In view of the common ownership, the extensive interchange of employees and equipment and goods, and the unified and integrated labor relations, . . ., the Employer and its five wholly owned subsidiaries appear to be one integrated operation under common control and therefore constitute a single employer for jurisdictional purposes.

In contrast, the board in *Consolidated Gas Co. of Savannah*, 107 N.L.R.B. 148, 149–50 (1953), noted,

> Notwithstanding the interlocking directors among the parent company and the subsidiaries, all 5 corporations are conducted as separate enterprises, except that the holding company selects sources of supply for its subsidiaries and prepares, and allocates funds for, mutual advertising programs. Each subsidiary has a separate manager, offices and books of account, and prepares separate tax returns of all kinds. Each handles its own selling activities. In addition, each corporation exercises full control over the employment conditions of its respective employees. There is no interchange of employees among the corporations. Wage rates and working conditions are set by the managers of the respective companies without regard for the personnel policies of the other subsidiaries. There is no showing that the parent holding company controls the labor relations policies of any of its subsidiaries.

and then held that the parent and the subsidiaries were separate entities for the jurisdictional purposes.

■ Cudahy is a wholly owned subsidiary of defendant General Host. The record be-

---

**6.** Because of the lack of controlling precedent and the importance of the issue of NLRB preemption, both in this case and in others, I will make the necessary findings to allow immediate appeal on this question by all of the parties.

fore me gives no indication of the degree of control that General Host exercised over Cudahy's Denver operations. If that control was substantial, then the present dispute between the plaintiffs and General Host was arguably within the NLRB's exclusive jurisdiction. On the other hand, if Cudahy set its own labor policies, then General Host was not subject to the NLRB's jurisdiction on the present dispute. Because General Host has not made a sufficient showing, I deny its motion to dismiss for lack of subject-matter jurisdiction. It may, however, file a new motion with the necessary supporting affidavits if it believes that it exercised sufficient control over Cudahy's labor policies to remove it from this court's diversity jurisdiction. See F.R. Civ.P. 12(h)(3).

 I also conclude that the dispute between the plaintiffs and defendant Bar-S is not arguably within the NLRB's exclusive jurisdiction. If a successor employer is in fact an *alter ego* of the former employer, then it will be subject to the NLRB's jurisdiction, and may, for example, be required to honor a previous collective bargaining agreement. See, e.g., *N.L.R.B. v. Tricor Products, Inc.*, 636 F.2d 266 (10th Cir. 1980). However, the NLRB has found that Bar-S was not an alter ego of Cudahy, and therefore is not subject to the NLRB's jurisdiction on this ground. Stated simply, Bar-S cannot have it both ways. Having successfully argued before the NLRB that it was separate and distinct from Cudahy, Bar-S cannot now claim that it was an *alter ego* of Cudahy and thus subject to NLRB jurisdiction.

 A successor employer will also be subject to the NLRB's jurisdiction if it engaged in unfair labor practices. See, e.g., *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). The plaintiffs' complaint does not, however, allege that Bar-S has engaged in any unfair labor practices

after becoming the successor employer; instead it alleges that Bar-S committed tortious acts causing the plaintiffs damages before it became an employer. This cause of action is only peripherally related to matters within the NLRB's exclusive jurisdiction and therefore may be heard by this court.[7] See *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 189, 98 S.Ct. 1745, 1753, 56 L.Ed.2d 209 (1978).

### B. EXHAUSTION OF CONTRACT REMEDIES

Defendants Cudahy and General Host also argue that this court lacks subject-matter jurisdiction because their allegedly wrongful conduct is subject to the grievance arbitration provisions of the collective bargaining agreement between Cudahy and the union and that arbitration is currently pending.

 Because I have already concluded that this court does not have subject-matter jurisdiction to hear the claim against Cudahy, I do not consider the exhaustion requirement insofar as it applies to Cudahy. However, General Host also asserts the exhaustion argument:

> That ... General Host ... technically is not a party to the collective bargaining agreement between Cudahy ... and the ... Union does not alter the significant fact that any award of relief against Cudahy ... under the collective bargaining agreement will adversely affect General Host ... because Cudahy ... is a wholly owned subsidiary.

While it is no doubt true that a parent corporation will be adversely affected whenever a subsidiary is required to pay damages, such is not sufficient grounds for dismissing the complaint against the parent. Article XV of the collective bargaining agreement lists various arbitration requirements between the union and Cudahy; it does not obligate, or even mention, Gen-

---

7. This result is not changed because Bar-S was also charged in the union's complaint before the NLRB. If the NLRB had found that Bar-S was merely an *alter ego* of Cudahy, then Bar-S would have properly been before it. Because of its finding that there was no *alter ego*, there was no basis for NLRB jurisdiction over Bar-S.

eral Host. Because General Host is not a party to the collective bargaining agreement, it cannot assert an exhaustion requirement.

## II. FAILURE TO STATE A CLAIM

In addition to challenging this court's subject-matter jurisdiction, all of the defendants have moved to dismiss the complaint under F.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted. Although the complaint does not contain explicitly separate claims for relief, the plaintiffs characterize it as stating three separate claims: tortious interference with contract, civil conspiracy and fraud. I will consider each claim separately.

### A. TORTIOUS INTERFERENCE WITH CONTRACT

In *Comtrol, Inc. v. Mountain States Telephone and Telegraph Co.*, 32 Colo.App. 384, 513 P.2d 1082, 1084 (1973), the court listed the elements of the tort of intentionally inducing a breach of contract:

(1) existence of a valid contract between plaintiff and a third party;

(2) knowledge by the defendant of this contract, or knowledge of facts which should lead him to inquire as to the existence of the contract;

(3) intent by the defendant to induce a breach of contract by the third party;

(4) action by the defendant which induces a breach of contract; and

(5) damage to the plaintiff.

(citing, *inter alia*, Rest. 2d (Torts) section 766). See also *Carman v. Heber*, Colo.App., 601 P.2d 646, 647 (1979). While the parties have spent considerable time briefing the issue of whether a party to a contract can be liable for conspiring with non-parties to cause a tortious interference with a contract, I do not need to resolve that issue here because the only defendant party to the contract, Cudahy, has been dismissed from this case.

██ Defendant Bar-S argues that the complaint should be dismissed because all of the defendants were *alter egos*, and thus there was no third party, as required for the tort. As I noted before, the NLRB found that the three defendants were not *alter egos*. Accordingly, I reject Bar-S's argument and hold that the plaintiffs have stated a claim for tortious inducement of breach of contract against Bar-S.

Defendant General Host argues that the tort claim against it should be dismissed because it was privileged, as a parent corporation, to direct, and if necessary, interfere, with Cudahy's contractual relations, citing *Brierwood Shoe Corp. v. Sears, Roebuck & Co.*, 479 F.Supp. 563, 565 (S.D.N.Y.1979). The plaintiffs respond that there is no general rule barring an interference-of-contract claim against a parent corporation where its subsidiary is a party to the contract. In support of this argument, they cite *UAW v. Cardwell Manufacturing Co.*, 416 F.Supp. 1267, 1283–84 (D.Kan.1976), which found for a plaintiff and against a defendant on such a claim. Apparently there is no Colorado law on this point.

██ I deny General Host's motion to dismiss. While *Brierwood Shoe* may be to the contrary, I do not believe that there is a general rule in Colorado that a parent corporation is always immune from claims of tortiously inducing breach of contract to which its subsidiary is a party. The claim of legitimate business management is more properly raised as an affirmative defense, to be considered by the finder of fact. Further, given the unusual facts of this case, such a ruling would deprive the plaintiffs of any remedy against General Host. Accepting their allegations as true, as I must in a motion to dismiss, I must choose the rule which provides a remedy where an obvious wrong is presented.

### B. CIVIL CONSPIRACY

██ In *Lockwood Grader Corp. v. Bockhaus*, 129 Colo. 339, 345–46, 270 P.2d 193, 196 (1954), the court stated the elements of a claim of civil conspiracy:

(1) two or more persons, and for this purpose a corporation is a person;

(2) an object to be accomplished;

(3) a meeting of minds on the object or course of action;

(4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.

While the plaintiffs have alleged sufficient facts to establish four of these elements, they have not alleged that any of the defendants committed any specific unlawful overt act. I conclude, however, that the plaintiffs' complaint contains sufficient allegations to state a conspiracy claim. F.R. Civ.P. 8(a)(2) requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." By alleging that the defendants conspired to deprive the plaintiffs of their rights, the plaintiffs have impliedly alleged that the defendants committed at least one unlawful overt act. What this specific act is can be developed during discovery and presented in the pre-trial order.

A more difficult question is whether this court will have jurisdiction to hear a civil conspiracy claim if the unlawful overt act is the violation of a federal labor statute. In *UAW v. Wisconsin Employment Relations Board*, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651 (1949) (*partially overruled on other grounds, Local 76, International Association of Machinists*, 427 U.S. 132, 151–54, 96 S.Ct. 2548, 2558–60, 49 L.Ed.2d 396 (1976)), the court considered the interplay between federal labor statutes and state conspiracy laws. The court noted that employee and union practices had often been treated as illegal conspiracies in the past, and were now protected by federal law. *Id.* 336 U.S. at 257–58, 69 S.Ct. at 523. See generally W. LaFave & A. Scott, *Criminal Law* 455 n.25 (1972). The court also delineated the scope of the new protection:

> No longer can any state, as to relations within reach of the Act, treat otherwise lawful activities to aid unionization as an illegal conspiracy merely because they are undertaken by many persons acting in concert. But because legal conduct may not be made illegal by concert, it does not mean that otherwise illegal action is made legal by concert.

*Id.* 336 U.S. at 258, 69 S.Ct. at 523 (footnote omitted). Five years later, in *United Con-struction Workers v. Laburnum Construction Co.*, 347 U.S. 656, 663–64, 74 S.Ct. 833, 837, 98 L.Ed. 1025 (1954), the court emphasized that at least some state tort actions for the recovery of damages caused by unfair labor practices were not preempted:

> Here Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured respondent from this right of recovery will deprive it of its property right without recourse of compensation.

Accordingly, some lower courts have held that state tort actions for conspiracies were not preempted by federal law, even though the conspiracy involved an unfair labor practice. See, e.g., *Irving Subway Grating Co. v. Silverman*, 117 F.Supp. 671, 678 (E.D. N.Y.1953); *Benjamin v. Foidl*, 379 Pa. 540, 109 A.2d 300, 301 (1954). Of course, where there is a danger of unreasonable interference with the NLRB's exclusive jurisdiction, state courts are without jurisdiction to hear a conspiracy claim. See, e.g., *Mangus v. A. C. E. Freight, Inc.*, 6 Ohio App.2d 87, 216 N.E.2d 639, 53 Labor Cases (CCH) para. 11,237 (1966); *Caton v. Pic-Walsh Freight Co.*, 211 Tenn. 334, 364 S.W.2d 931, 932–33 (1963).

These cases make it clear that courts will have to engage in the same balancing process to determine whether a civil conspiracy action that involves an allegedly illegal labor practice is preempted by the federal labor laws as they have to follow in other preemption cases. There are, however, some special considerations in conspiracy cases that may favor state-court jurisdiction in close cases. Often there will be alleged conspirators who are not subject to the NLRB's jurisdiction on the underlying claim. In the present case, by finding that Bar-S was not an *alter ego* of Cudahy, and by finding that there was no illicit connection between General Host and Cudahy, the NLRB implicitly found that these two defendants were not subject to its exclusive jurisdiction. There is therefore no danger of judicial interference with the NLRB if

this court hears a conspiracy claim against these two defendants, even if the claim involves a violation of the federal labor statutes.

Courts should also hesitate to find NLRB preemption in conspiracy cases involving labor disputes because of the strong legislative policies behind the conspiracy laws. One of the main purposes of criminal conspiracy laws is to prevent and penalize the special, and often greater, dangers inherent in group criminal activity. See generally W. LaFave & A. Scott, *Criminal Law* 459, 494–95 (1972). Another purpose is to penalize those who conspire toward an unlawful aim, even though they do not personally participate in the overt unlawful acts. Although civil conspiracy laws have received much less attention from the courts and the commentators, many of these same considerations are present. Courts therefore should scrutinize separately a civil conspiracy claim when balancing federal and state interests to determine if there is federal preemption.

As I noted before, there is virtually no danger of interference with the NLRB's exclusive jurisdiction if this court hears the civil conspiracy claim against defendants Bar-S and General Host because neither was subject to the NLRB's jurisdiction in this case. I therefore deny their motions to dismiss the civil conspiracy claim.

## C. FRAUD

In *Morrison v. Goodspeed*, 100 Colo. 470, 477–78, 68 P.2d 458, 462 (1937), the court listed the elements of fraud:

(1) A false representation of a material existing fact, or a representation as to a material existing fact made with a reckless disregard of its truth or falsity; or a concealment of a material existing fact, that in equity and good conscience should be disclosed.

(2) Knowledge on the part of the one making the representation that it is false; or utter indifference to its truth or falsity; or knowledge that he is concealing a material fact that in equity and good conscience he should disclose.

(3) Ignorance on the part of the one to whom representations are made or from whom such fact is concealed, of the falsity of the representation or of the existence of the fact concealed.

(4) The representation or concealment made or practiced with the intention that it shall be acted upon.

(5) Action on the representation or concealment resulting in damage.

(citation omitted). In addition, F.R.Civ.P. 9(b) requires that allegations of fraud be made "with particularity."

The present complaint does not include allegations sufficient to establish any of these five elements. It may be that the plaintiffs are merely reciting the pertinent parts of C.R.S. section 13–21–102 in support of their claim for exemplary damages, a claim that must be resolved at trial. If, however, they intend to state a separate fraud claim, they will have to file an amended complaint with more particularized allegations. I therefore grant the motion to dismiss insofar as it states a separate claim based on fraud, but will allow the plaintiffs to amend their complaint to include more particularized allegations.

IT IS ORDERED that defendant Cudahy's motion to dismiss for lack of subject-matter jurisdiction, pursuant to F.R.Civ.P. 12(b)(1), is granted. It is further

ORDERED that there is no just reason for delay and therefore the clerk shall enter judgment, pursuant to F.R.Civ.P. 54(b), dismissing this complaint and civil action against defendant Cudahy. Each party to bear his or its own costs. It is further

ORDERED that defendant General Host's and defendant Bar-S Food's motions to dismiss for lack of subject-matter jurisdiction, pursuant to F.R.Civ.P. 12(b)(1), are denied. It is further

ORDERED the motions to dismiss for failure to state a claim, pursuant to F.R.Civ.P. 12(b)(6), filed by defendants General Host and Bar-S Food, are granted in part and denied in part. Insofar as the complaint states a claim for fraud, it is dismissed without prejudice to file an amend-

ed complaint. In all other respects the motions to dismiss are denied. It is further

ORDERED that the previous orders involve controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from those orders may materially advance the ultimate termination of this litigation and therefore the orders are certified for interlocutory appeal pursuant to 28 U.S.C. section 1292(b).