Joseph V. RODRIGUEZ, Frank J. Martinez, Clarence A. Weigand, Susie Reyes, Audrey R. McConnell and Eli Taylor, Plaintiffs,

v.

BAR–S FOOD COMPANY, Defendant.

Civ. A. No. 81–K–2153.

United States District Court,
D. Colorado.

July 11, 1983.

---

1242

Martin D. Buckley, Hornbein, MacDonald, Fattor & Buckley, Denver, Colo., for plaintiffs.

William G. Imig, Owen C. Rouse, Ireland, Stapleton & Pryor, P.C., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This case comes before me on defendant's motion for summary judgment and on plaintiffs' motion to maintain the class action. Plaintiffs have confessed Bar-S's motion to bifurcate the issues of liability and damages, should I decide that the plaintiffs may proceed with a class action. A summary of the factual and procedural background of this case is essential.

## I. FACTUAL BACKGROUND

Plaintiffs are all members of Local P–85 of the United Food and Commercial Workers International Union. Before August, 1981, they were employed in the Denver meat packing plant of Cudahy Company, a wholly-owned subsidiary of General Host Corporation. A master agreement then in force governed the terms and conditions of the plaintiffs' employment by Cudahy. Bar-S is a Delaware corporation organized in 1981 to purchase substantially all the assets of Cudahy's Meat Division, which General Host decided to sell in the Fall of 1980.

This division included four meat packing plants in Atlanta, Phoenix, Seattle and Denver, as well as several related distribution centers. After some efforts, General Host was unable to locate an outside buyer. It then entered into negotiations with members of Cudahy's management who had expressed an interest in purchasing the meat division. The management group was headed by Timothy T. Day, then-president of Cudahy. In March, 1981, General Host announced an agreement in principal to sell the bulk of Cudahy's assets to Day's group. The group was subsequently incorporated as Bar-S Food Company, the defendant here.

On August 28, 1981, all of Cudahy's Denver employees were terminated, retired or transferred, and the Denver plant closed. The employees received severance pay and benefits under the master agreement. On the same day, Cudahy and Bar-S consummated the sale of Cudahy with the execution of an assets purchase agreement.

Under the terms of the agreement, the purchasers invested approximately $500,000 towards the sale price of 23.5 million dollars. They met the balance with a third party secured loan and issuance of preferred stock to General Host. Within a week, the Denver plant reopened under the new owners, with a non-union work force which received wages substantially lower than those which the union members had received.

## II. PROCEDURAL HISTORY

Just before the sale to Bar-S, the union filed with the NLRB an unfair labor practices charge against Bar-S, Cudahy and General Host. The charge claimed, *inter alia,* that the three companies intended to repudiate the master agreement and abrogate the terms and conditions of employment at the Denver plant. The NLRB refused to act on the union's charges. NLRB's regional director found the sale to Bar-S to be bona fide. He also found that Bar-S was not a disguised continuance of Cudahy within the Board's traditional alter ego standards, since the only continuing relationship was that of a secured creditor and preferred stockholder of non-voting stock. On appeal and motion for reconsideration, the director's findings were upheld.

Next, in July, 1981, the union initiated a grievance procedure against Cudahy. At issue was whether Cudahy had violated the collective bargaining agreement between the parties when it closed its Denver plant and sold its assets to Bar-S. After a two day hearing, the arbitrator denied the grievance. He found that the agreement did not prohibit a bona fide sale and that the sale to Bar-S was legitimate.

Immediately before the sale, the Union also filed a complaint in this court against Cudahy seeking to enjoin the sale of the plant to Bar-S. Bar-S intervened. After a

hearing, Judge Finesilver denied the injunction, finding that the transaction was not a "sham, a facade or pretext."

Local P–85 filed a second grievance in October, 1981, this time against Cudahy and Bar-S, claiming that both companies were operating the Denver plant in violation of the collective bargaining agreement. Bar-S refused to arbitrate on the grounds that it was not a party to any agreement obligating it to do so. When the union threatened suit to compel arbitration, Bar-S complained to the NLRB, seeking relief from the grievance and relief from the Union's picketing at its Brighton Boulevard plant. In its resolution of the grievance, the NLRB required the union to withdraw its grievance and cease picketing.

This suit was filed against General Host, Cudahy and Bar-S on November 25, 1981 in state court, then removed to this court. Jurisdiction is based solely on diversity of citizenship, 28 U.S.C. § 1332. In an earlier opinion and order, I granted Cudahy's motion to dismiss for lack of subject matter jurisdiction. *Rodriguez v. Bar-S Food Co.*, 539 F.Supp. 710 (1982). I did so because I found the "dispute between the plaintiffs and defendant Cudahy [was] arguably within the scope of the NLRB's exclusive jurisdiction...." 539 F.Supp. at 716. Following that opinion, plaintiffs conceded that the parent corporation, General Host, should be dismissed for the same reason. I refused to dismiss Bar-S, explaining that "the cause of action is only peripherally related to matters within the NLRB's exclusive jurisdiction and therefore may be heard by this court." 539 F.Supp. at 717.

## III. SUMMARY JUDGMENT

Bar-S advances three arguments in support of its motion for summary judgment.

First it claims that the plaintiffs are collaterally estopped by the arbitrator's awards in the initial grievance filed by the union. Second, it reasserts its earlier argument that this action is preempted by federal labor law, relying on the recent U.S. Supreme Court opinion in *Local 926, International Union of Operating Engineers v. Jones*, —— U.S. ——, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983). Finally, it argues on the merits that summary judgment is appropriate because the plaintiffs' termination was not caused by Bar-S.

The plaintiffs, in response, deny they are collaterally estopped. They say the issues are different in this proceeding than in the arbitration and that they did not have a full and fair opportunity to litigate in the earlier proceeding. They next argue that I was correct in my earlier determination that this case has not been preempted by federal law. Finally, they suggest there are numerous factual issues remaining which cannot be resolved by summary judgment.

### 1. Collateral Estoppel

This is a diversity case. As such, I must turn to Colorado law to resolve Bar-S's collateral estoppel argument. *Peffer v. Bennett*, 523 F.2d 1323 (10th Cir.1975). Two issues must be resolved. First, I must decide if Colorado law permits an arbitration award to be given preclusive effect. Next, I must decide if the four requirements of *Pomeroy v. Waitkus* [1] were satisfied in the earlier proceeding.

### A.

Whether an arbitration award can be given preclusive effect is an issue little litigated in Colorado. I am able to find only one case on point. *Smith v. Piercy*, 71 Colo. 187, 205 P. 275 (1922), arose initially over a

---

1. 183 Colo. 344, 517 P.2d 396 (1974). The *Pomeroy* case requires me to answer four questions affirmatively before permitting issue preclusion:

First, was the issue decided in the prior adjudication identical with the one presented in the action in question? Second, was there a final judgment on the merits? Third, was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? And, fourth, did the party against whom the plea is asserted have a full and fair opportunity to litigate the issue in the prior adjudication? 517 P.2d at 399.

dispute about the purchase and sale of land. Following an arbitrator's award against Smith, he brought suit for damages and breach of contract, against which Piercy set up the arbitration award. After an adverse directed verdict, Smith appealed. The Colorado Supreme Court held that every issue involving the transaction was properly before the arbitrators, "and were in fact and law settled by their findings." 71 Colo. at 190, 205 P. 275.

█ The Colorado courts' treatment of estoppel in the context of former administrative proceedings is also instructive. Following the Supreme Court's lead in *United States v. Utah Construction and Mining Company,* 384 U.S. 394, 421, 422, 86 S.Ct. 1545, 1559, 1560, 16 L.Ed.2d 642 (1966), the Colorado Supreme Court has recognized that the doctrines of res judicata and collateral estoppel may be applied to administrative hearings as long as the *Pomeroy* requirements are met. *Umberfield v. School District No. 11,* 185 Colo. 165, 522 P.2d 730 (1974). Accordingly, I hold that an arbitration award may be given preclusive effect against a subsequent judicial proceeding.

### B.

█ The parties are in agreement that there was a final judgment in the arbitration hearing and that all the plaintiffs were in privity with their union in the earlier proceeding. I do not need to reach the very difficult question of identicality of issues, because I conclude that the plaintiffs did not have a fair and full opportunity to litigate in the earlier forum. *Rawson v.*

*Sears Roebuck & Co.,* 530 F.Supp. 776 (D.C. Colo.1982) (Kane, J.).

The Colorado courts have not specifically addressed what factors I should consider in assessing the plaintiffs' full-opportunity-to-litigate claims.[2] The *Restatement (Second) Judgments* supplies the following rule.

A party precluded from relitigating an issue with an opposing party ... is also precluded from doing so with another person unless the fact that he lacked a full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which consideration should be given include those enumerated in § 28 and also whether:

&ast; &ast; &ast; &ast; &ast; &ast;

(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issues that were not available in the first action and could likely result in the issue being differently determined.[3]

In *Blonder-Tongue Laboratories v. University of Illinois Foundation,*[4] the Supreme Court noted that the party resisting nonmutual preclusion "must be permitted to demonstrate, if he can, that he did not have a 'fair opportunity procedurally, substantively and evidentially to pursue his claim the first time.'"

Bar-S argues that the arbitration hearing contained "all the elements of adjudicatory procedure necessary to give an arbitration award binding effect." These include: no-

---

2. In *Pomeroy, supra,* Pomeroy was denied the opportunity to raise the affirmative defenses of contributory negligence and assumption of risk. And *see National Farmers Union Property and Casualty Co. v. Frackleton,* 662 P.2d 1056 (Colo.1983) (where plaintiff never joined as party in second suit, he could not be bound by jury's determination of comparative negligence.)

3. *Restatement (Second) Judgments,* § 29. The only factor from section 28 which is arguably applicable is: "The party against whom preclu-

sion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." Since arbitration under the collective bargaining agreement is designed to be final and binding on the parties, PX–1, page 35, the nonavailability of review is not an appropriate factor to consider. *See* Comment c, § 29.

4. 402 U.S. 313, 333, 334, 91 S.Ct. 1434, 1445, 1446, 28 L.Ed.2d 788 (1971).

tice, the opportunity to be heard and to present evidence and legal argument, to cross-examine witnesses and to present rebuttal testimony. A review of the transcript suggests that the union exercised its rights to the fullest extent. In the two day hearing the union presented four witnesses and Cudahy, two. In excess of 100 exhibits were introduced into evidence. Extensive cross-examination was conducted. The union was unable, however, to procure the attendance of any of the former members of the management group (now Bar-S) at the hearing. This group, which negotiated the sale of the Denver plant to Bar-S, includes Timothy Day, Bob Uhl, Keith Pace and Morris Kinne.[5] All were apparently[6] beyond the arbitrator's subpoena power and the union was deprived of an opportunity to present what it considered to be crucial evidence on the role Bar-S played in the negotiations leading to the sale of Cudahy's assets.[7]

I accordingly conclude that the union must be given an opportunity to be heard on these issues. Bar-S's motion for summary judgment on collateral estoppel is denied.

### 2. Preemption

■ Bar-S argues, in what amounts to a motion for reconsideration of my earlier ruling, that this case is preempted by federal labor law, as one arguably within the NLRB's exclusive jurisdiction. In support of its preemption claim, Bar-S relies upon *Local 926, International Union of Operating Engineers v. Jones,* —— U.S. ——, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983). *Jones*

held that one who fluctuates between a supervisory and non-supervisory position is preempted from bringing a state court action for interference by the union with his contractual relationship with his employer. In *Jones,* the court found that the state action asserted claims which were identical to the unfair labor practice claim filed with the NLRB. The court saw an obvious and substantial risk that the same issue before the Board—whether the union had been responsible for firing Jones—would have been presented in the state court. Such a risk is not present here. I am asked to decide only what role, if any, Bar-S played in the termination of the plaintiffs. This issue was not before the NLRB in this case because it concluded that Bar-S was not Cudahy's *alter ego* and therefore not subject to its jurisdiction. As I said in my earlier opinion

> Stated simply, Bar-S cannot have it both ways. Having successfully argued before the NLRB that it was separate and distinct from Cudahy, Bar-S cannot now claim that it was an *alter ego* of Cudahy and thus subject to NLRB jurisdiction.

539 F.Supp. at 717. Bar-S's Motion for summary judgment is therefore denied on this ground as well.

### 3. Merits

Bar-S finally contends that it is entitled to summary judgment because the plaintiffs are unable to show that Bar-S played an active and substantial part in Cudahy's termination of its Denver employees.

---

5. By reference, the transcript of the preliminary injunction was submitted as an exhibit to the arbitrator. I note that Mr. Kinne testified at that hearing before Judge Finesilver, but also note that plaintiffs' opportunity to cross-examine him was restricted. DX–B12, pp. 73–77.

6. I say "apparently" because nowhere am I able to determine the precise limits of the arbitrator's subpoena powers. Bar-S, however, does not dispute this contention.

7. My research has turned up only one decision where the nonavailability of witnesses persuaded a judge to deny preclusion. *Continental Can Co. v. Hudson Foam Latex Prods., Inc.,*

123 N.J. 364, 303 A.2d 97 (1973). *Hudson* was reversed on appeal when the Appellate Division found that the witnesses had been fully available at the time of the first trial and had not been presented as part of a deliberate program of avoiding trial of the issues. 129 N.J.Super. 426, 324 A.2d 60, 61 (1974). In *GAF Corp. v. Eastman Kodak Co.,* 519 F.Supp. 1203, 1215, 1216 (S.D.N.Y.1981), Judge Pierce held that offensive issue preclusion was appropriate despite the defendant's "unfairness" claim, where the witness had been "available" in the earlier trial in deposition testimony.

Bar-S claims that Cudahy decided to sell or close the Denver plant long before Bar-S and its organizers made the decision to purchase, and that therefore it cannot be said to have caused the terminations.

In the context of a motion for summary judgment I must review all supporting and opposing affidavits and exhibits to determine whether any issues of material fact remain to be determined. I must view the evidence in the light most favorable to the party opposing summary judgment and must deny summary judgment unless the moving party "demonstrates its entitlement beyond a reasonable doubt." *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir.1980).

■ With this standard in mind, I reject the defendant's motion for summary judgment on the merits. I find that there are critical questions of fact yet to be resolved, especially Bar-S's motivation in purchasing Cudahy's assets. In his deposition, Timothy Day, president of Bar-S and former president of Cudahy, made it clear that Bar-S would not assume any existing labor contract liabilities and that he intended to run Bar-S on a non-union basis. *Plaintiffs' Exhibit D.* Since a jury reasonably could conclude from this that Bar-S caused Cudahy's termination of the plaintiffs, I deny the motion for summary judgment on the merits.

## IV. MOTION TO MAINTAIN CLASS ACTION

Plaintiffs have moved for a certification order, pursuant to Rule 23(c)(1), *Fed.R. Civ.P.,* on behalf of themselves and all other former hourly employees of Cudahy Company at Cudahy's Denver packing plant whose terms and conditions of employment were governed by the collective bargaining agreement between Cudahy and United Food and Commercial Workers, Local P–85, and whose employment at the Denver plant was terminated by Cudahy on August 28, 1981. Cudahy opposes the motion, claiming that the plaintiffs have failed to demonstrate the required numerosity and fairness and adequacy of representation necessary to maintain a class action.

### 1. Numerosity

■ In determining whether the proposed class meets Rule 23's numerosity requirement, I am mindful of the fact that "impracticability of joinder" does not mean "impossibility." *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909 (9th Cir. 1964). In the exercise of its discretion, a trial court must consider not only the size of the class, but also its geographic dispersion and whether the members' names and addresses are easily ascertainable. *Garcia v. Gloor,* 618 F.2d 264, 267 (5th Cir.1980).

The proposed class in this case can be identified and located easily from the Cudahy seniority list. Nearly all the proposed class members continue to reside in the Denver metropolitan area. These factors militate against certification. I find, however, that the size of the proposed class— 230—is sufficiently large that it would be impracticable and a heavy burden on this court were certification refused. Rule 23's numerosity requirement is therefore met.

### 2. Fairness and Adequacy of Representation

Bar-S argues that Joseph Rodriguez cannot fairly and adequately represent the proposed class because he was not terminated by Cudahy, but rather exercised his right under the master agreement to transfer to Cudahy's Omaha, Nebraska plant. They argue further that because plaintiffs Weigand, Reyes and Taylor took early retirement benefits under the master agreement, they no longer have a personal stake in the outcome of the litigation. I reject this line of reasoning.

The claims of the named plaintiffs and those of the class members are identical, only the amount of damages suffered by each is different. Some class members transferred to Cudahy's other plants, some took early retirement and some received only severance pay. All were forced to do

so, under the plaintiffs' theory, because of Bar-S's purchase of the Denver plant. Though their damages be different, they flow from a common nucleus of operative fact. *Lamb v. United Security Life Co.,* 59 F.R.D. 25 (D.Iowa 1972). Plaintiffs need only show, as they have done here, that their interests are compatible and not antagonistic to the interests of the other class members. *Mekani v. Miller Brewing Co.,* 93 F.R.D. 506 (D.C.Mich.1982). The plaintiffs' motion to maintain this as a class action is therefore granted.

## V. CONCLUSION

IT IS HEREBY ORDERED, in accordance with this opinion, that the defendant's motion for summary judgment is denied. It is further ordered that the defendant's motion to bifurcate the issues of liability and damages is granted. It is also ordered that this action may be maintained as a class action, such class to consist of all former employees of Cudahy Company at Cudahy's Denver packing plant whose terms and conditions of employment were governed by the collective bargaining agreement between Cudahy and the United Food and Commercial Workers International Union, Local P–85, and whose employment was terminated by Cudahy on August 28, 1981. In accordance with this order, plaintiffs Joseph v. Rodriguez, Frank J. Martinez, Clarence A. Weigand, Susie Reyes, Audrey R. McConnell and Eli Taylor are hereby designated class representatives for the purposes of this action.