**Leonard JOSEPH, Regina Willmirth, Richard H. Wright, Betty Conner Redwine, Kathryn and Gary Himilton, and Jan and Gordon Maxwell, on behalf of themselves and others similarly situated, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, a Delware corporation, Defendant.**

**Civ. A. No. 84–K–513.**

United States District Court,
D. Colorado.

March 14, 1986.

Kenneth B. Siegel, Sherman & Howard, Richard H. Right, Denver, Colo., for plaintiffs.

Marc Flink, Baker & Hostetler, Denver, Colo., Hugh Whiting, Jones, Day, Reavis & Pogue, Dallas, Tex., Robert W. Culver, and Edward C. Wolfe, General Motors Corp., Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This diversity action is before me on plaintiffs' motion to certify a class pursuant to Fed.R.Civ.P. 23(b)(3).

### I. BACKGROUND

The named plaintiffs seek to represent a class consisting of all Colorado residents who are current or former owners or lessees of 1981 Cadillacs equipped with the V8–6–4 engine which was designed, manufactured, marketed, and distributed by defendant General Motors Corporation (GM). Each of the plaintiffs, as well as several potential class members, have submitted affidavits representing that they are Colorado residents and current or former owners or lessees of 1981 Cadillacs equipped with the V8–6–4 engine. Further, these affidavits describe problems which plaintiffs and the potential class members have experienced with the operation of the V8–6–4 engine. According to these affidavits, the operating difficulties include unexpected stalling, hesitation, surging, and poor fuel economy. Plaintiffs contend that these problems are both common to and typical of all V8–6–4 engines and are caused by design defects. Plaintiffs' expert witness, Simon Tamny, opines, in an affidavit submitted in support of this motion, that the V8–6–4 engine was defectively designed in several stated particulars. Tamny asserts that the operating problems described by the plaintiffs and the potential class members in their affidavits are caused by the design defects and are both common to and typical of all V8–6–4 engines. These conclusions are based upon Tamny's review of thousands of GM engineering documents concerning the V8–6–4 engine as well as his inspection of ·1981 Cadillacs equipped with this engine.

Plaintiffs further allege that GM knew that the V8–6–4 engine was defective before it marketed and distributed the Cadillacs. It is asserted that GM used the V8–6–4 engine, despite this knowledge, in order to avoid the so-called Gas Guzzler Tax which could have cost GM as much as 350 million dollars. According to plaintiffs, GM embarked on a massive campaign to conceal the engine's design defects by failing to disclose information and falsely representing the engine to putative buyers. Also, plaintiffs maintain that GM issued warranties knowing that it could not honor them and repair the vehicles.

Plaintiffs' specific claims are for negligence, strict products liability, fraudulent nondisclosure, fraudulent false representation, breach of express warranty, breach of implied warranty, and violation of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301 *et seq.*

### II. CLASS CERTIFICATION

#### 1. General Principles

When determining whether it should grant certification to a class of plaintiffs, a court must not delve into the merits of the action. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *see also Hurwitz v. R.B. Jones Corp.,* 76 F.R.D. 149, 157 (W.D.Mo.1977). A court is obliged to determine only whether the requirements of Rule 23 have been satisfied. *See Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.1970), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); *Chestnut Fleet Rentals, Inc. v. Hertz Corp.,* 72 F.R.D. 541, 543 (E.D.Pa.1976). On the other hand, in determining whether the requirements of Rule 23 have been met, it is

often necessary to analyze the substantive claims and defenses of the parties and the essential elements of those claims and defenses. *See Hurwitz,* 76 F.R.D. 149, 157 n. 3; *see also Biben v. Card,* No. 84–0844–CV–W–6, slip op. (W.D.Mo. January 6, 1986). Nevertheless, there is a distinction between identifying the issues that the case will present, for purposes of determining whether the requirements of Rule 23 have been met, and deciding those issues on the merits. *See Hurwitz,* 76 F.R.D. 149, 157.

■■■ Whether a class may be certified is left to the discretion of the court. *See Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981). I must adhere to the provisions of Rule 23 in deciding whether the plaintiffs' cause of action is suitable for resolution on a class-wide basis. *See McCarthy v. Kleindienst,* 741 F.2d 1406, 1412 n. 6 (D.C.Cir.1984); *see also Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 12, 98 S.Ct. 2454, 2458 n. 12, 57 L.Ed.2d 351 (1978). In making the certification determination, I must be mindful that certification is conditional and may be altered, exanded, subdivided, or vacated as the case progresses toward resolution on the merits. *See* Fed.R.Civ.P. 23(c)(1), 23(c)(4)(B); *Walsh v. Ford Motor Co.,* 106 F.R.D. 378, 387 (D.D.C.1985). Because the class certification is subject to later modification, the court should err in favor of, and not against, the maintenance of the class action. *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *see also Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791, 794 (10th Cir.1970); *Woe v. Cuomo,* 729 F.2d 96, 107 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984); *Alameda Oil Co. v. Ideal Basic Industries, Inc.,* 326 F.Supp. 98, 102 (D.Colo.1971).

■■■ The party seeking to invoke Rule 23 has the burden of showing that all of the prerequisites to utilizing the class action procedure have been satisfied. 7 A. Wright & C. Miller, *Federal Practice and Procedure* § 1759 at 578; *In Re Three Mile Island Litigation,* 87 F.R.D. 433, 440 (M.D.Pa.1980) (citing *Manning v. Princeton Consumer Discount Co., Inc.,* 533 F.2d 102 (3d Cir.1976), *cert. denied,* 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144 (1976)); *Albertson's, Inc. v. Amalgamated Sugar Co.,* 503 F.2d 459 (10th Cir.1974); *Masri v. Wakefield,* 106 F.R.D. 322, 324 (D.Colo.1984). More specifically, in order for an action to be maintained as a class action, it must first be established that the four requirements of Fed.R.Civ.P. 23(a) are satisfied. These requirements are as follows:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.

Second, it must be established that the case fits within one of the three subcategories of Rule 23(b). In the present case, plaintiffs seek certification under subsection (b)(3). Under this subsection, it must be established that the questions of law or fact common to the class predominate over any questions affecting only individual members (predominance), and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy (superiority).

With these general principles in mind, I now consider each of the prerequisites to class certification, and determine whether these prerequisites have been met in the instant case.

2. Numerosity

■■■ In determining whether the proposed class meets Rule 23(a)'s numerosity requirement, I first determe whether the class is sufficiently defined so that the potential class members can be identified. *See Rodriguez v. Bar-S Food Co.,* 567

F.Supp. 1241, 1247 (D.Colo.1983); 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1760 at 580. While the class does not have to be so ascertainable that every potential member can be specifically identified at the commencement of the action, the description of the class must be sufficiently definite so that it is administratively feasible for the court to ascertain whether a particular individual is a member. *See* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1760 at 580–81. I must also consider the size of the class itself. 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1762 at 594; *Rodriguez,* 567 F.Supp. 1241, 1247. "Although the party instituting the action need not show the exact number of potential members in order to satisfy this prerequisite, he does bear the burden of showing impracticability and his mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1)." *Id.; see also Biben, supra.*

In the instant case, plaintiffs assert that there are at least 1,760 current or former owners or lessees of 1981 Cadillacs in Colorado because GM has admitted that it has the names and addresses of 1,768 original purchasers of these cars in Colorado. According to plaintiffs, GM has refused to reveal this information which would have provided a starting point for determining how many additional persons would fall within the class definition. Plaintiffs further maintain that the definition of the class is specific and establishes objective criteria by which to ascertain whether a particular individual may be a member of the class.

GM, on the other hand, has tendered affidavits from eleven so-called "satisfied customers" who have not experienced the problems with their 1981 Cadillacs described by plaintiffs and who do not wish to assert claims against GM. GM argues that the class definition must fail because it does not provide a mechanism for segregation and exclusion of these "satisfied customers". GM also implies that the existence of these "satisfied customers" defeats the numerosity requirement in that the class size may not be large enough to require a class action.

An examination of the class definition in this case reveals that it is specific and sets an objective standard by which potential class members can be readily identified. Contrary to GM's assertions, the fact that the class may initially include persons who have not had difficulties with their V8–6–4 engines or who do not wish to have these purported problems remedied is not important at this stage of the litigation, *see* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1760 at 581; *see also Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985); *Lanner v. Wimmer,* 662 F.2d 1349 (10th Cir.1981); *Knuth v. Erie-Crawford Dairy Co-op. Ass'n.,* 395 F.2d 420 (3d Cir. 1968), unless, of course, it is shown that most, if not all, of the potential class members have no claims to be asserted by the class representatives. In the instant case, plaintiffs have shown that there are at least 1,760 potential class members. Joinder of even this number would be impracticable. *See Rodriguez,* 567 F.Supp. 1241, 1247 (joinder of 230 potential class members found to be impracticable). There is no evidence that most, or even all, of the potential class members have no claims against GM and GM's assertion of the existence of some "satisfied customers" does not prove otherwise. For these reasons, I find that the numerosity requirement has been satisfied in this case.

### 3. Commonality

■ The second prerequisite to class certification is that there must be issues of law or fact common to the class. Fed.R. Civ.P. 23(a)(2). This does not mean, however, that every issue must be common to the class. 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1763 at 603. "It is to be recognized that there may be varying fact situations among individual members of the class and this is all right as long as the claims of the plaintiffs and other class members are based on the same

legal or remedial theory." *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1189 (10th Cir.1975) (citations omitted). In other words, "[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983) (citations omitted); *see also Esplin*, 402 F.2d 94, 100.

In the present case, there is no dispute that the central issue to be decided is whether the V8–6–4 engine was defectively designed. This issue underlies every claim brought against GM and is common to every potential class member. It is also not disputed that there are some factual differences in the claims of the potential class member, such as the varying amounts of damages and degrees of reliance on GM's purported misrepresentations. These factual differences are irrelevant, however, for purposes of the· commonality requirement since there are common questions of law in this case. *See Alameda Oil*, 326 F.Supp. 98, 104. Thus, I find that this requirement has been met in this case.

4. Typicality

The third prerequisite to class certification is that the claims or defenses of the named plaintiffs be typical of the claims or defenses of the class. "It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent." 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1768 at 638–39; *see also Albertson's*, 503 F.2d 459, 463; *Rodriguez*, 567 F.Supp. 1241, 1248. This does not mean, however, that the positions of the named plaintiffs and the potential class members have to be identical. 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1769 at 654–55; *Milonas*, 691 F.2d 931, 938; *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 340 (10th Cir.1975). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1768 at 638–39. So long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied. *See Kornberg*, 741 F.2d 1332, 1337. "A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Id.; see also Rodriguez*, 567 F.Supp. 1241, 1248.

Plaintiffs contend that the claims they assert against GM are typical of those of the potential class members. More specifically, it is asserted that the class representatives and the class members have all been "subjected to the same defective engine which manifests common, irremediable problems," Plaintiffs' Reply Brief at 30, and that the claims of plaintiffs and the potential class members are based on the same legal theories.

GM attempts to dispute typicality in this case by again pointing to the fact that the class may initially include persons who do not wish to assert claims against GM. This argument is without merit. The mere fact that some class members may not wish to become members of the class or pursue claims against GM does not indicate that their interests are antagonistic to those of the named plaintiffs or the remainder of the class, so that class action treatment would be inappropriate. *See, e.g., Kornberg*, 741 F.2d 1332, 1337; *Lanner*, 662 F.2d 1349, 1357. Rather, the so-called "satisfied customers" would be indifferent as to the claims and potential recovery of the class.

I agree with plaintiffs that their claims against GM are typical of those of the class. Even though some of the facts underlying each person's claims may vary slightly, these factual differences do not create any conflict between the plaintiffs and the potential class members. Moreover, as stated above, the legal theories are common to both plaintiffs and the persons

they seek to represent. Finally, the claims asserted arise from the same set of circumstances; namely, those regarding the design, manufacture, marketing, and distribution of the 1981 Cadillacs equipped with the V8–6–4 engine. For these reasons, I conclude that the typicality prerequisite has been met in this case.

5. Predominance of Common Questions of Law or Fact

Since plaintiffs seek certification pursuant to Rule 23(b)(3), they must further establish that the common questions of law in this case predominate over any question affecting only individual members. Sometimes, the common questions may not warrant certification of a matter as a class action, but in other cases they will be sufficient to sustain a class action even if they do not dispose of the entire matter. 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1778 at 54. In determining whether common issues predominate, many courts look to whether a "common nucleus of operative facts" exists. *See, e.g., Esplin,* 402 F.2d 94, 99; *Payton v. Abbott Labs,* 83 F.R.D. 382, 391 (D.Mass.1979), *order vacated,* 100 F.R.D. 336 (D.Mass. 1983); *Davis v. Avco Corp.,* 371 F.Supp. 782, 792 (N.D.Ohio 1974); *Rodriguez,* 567 F.Supp. 1241, 1248; *see also* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1778 at 53. Ultimately, however, the determination of predominance must be in keeping with the basic objectives of the Rule 23(b)(3) class action. "Thus, when common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1778 at 53.

Implicit in the determination of predominance is an identification of the relevant factual and legal issues, and the elements of the claims and defenses in the case. *In Re Cadillac V8–6–4 Class Action,* 93 N.J. 412, 461 A.2d 736, 743 (N.J.1983). As discussed above, however, mere identification of the issues and elements of the claims and defenses is not an evaluation of the merits of the case; nor should it be.

In their second amended complaint, plaintiffs assert claims for negligence, strict products liability, fraudulent nondisclosure, fraudulent false representations, breach of express warranty, breach of implied warranty, and violation of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act. With respect to each of these claims, GM argues that individual questions of fact and law are inherent and that these individual questions predominate over any common questions.

After reviewing plaintiffs' claims, GM's defenses, and both parties' arguments regarding predominance, I find that there are some questions of fact and law in this case which will require individualized proof. These questions include: (1) whether the alleged design defects caused the claimed damages, (2) whether the class members relied on GM's express warranties, (3) whether the class members relied on GM's purported misrepresentations, and (4) the amount of damages suffered by each class member.

On the other hand, this case presents many common issues of law and fact, including: (1) whether the V8–6–4 engine was defectively designed, (2) whether GM was negligent in testing the engine, (3) whether the design defects existed at the time GM placed the Cadillacs in the stream of commerce, (4) whether the alleged design defects caused certain characteristic operational problems, (5) whether the engine is unreasonably dangerous because of the alleged defects, (6) whether GM failed to warn consumers of the alleged defects, (7) whether the engine is reasonably fit for the ordinary purposes for which it was intended to be used, (8) whether implied warranties of fitness and merchantability existed with respect to the V8–6–4 engine, (9) whether express warranties regarding the engine existed, (10) whether the express warranties satisfied certain disclosure requirements, (11) whether the implied

and express warranties were breached because of a common engine defect, (12) whether GM knew of the alleged defects before it marketed and distributed the Cadillacs, (13) whether GM misrepresented the performance ability and characteristics of the V8-6-4 engine, (14) whether GM failed to disclose information regarding the engine's purported defects and the problems caused by those defects, (15) whether GM was negligent in making the alleged misrepresentations and failing to disclose material facts, and (16) whether GM was negligent in placing the engine on the market knowing that it was defective.

These common issues represent the core of plaintiffs' action against GM. Were plaintiffs and potential class members required to bring separate actions, these questions would necessarily be relitigated over and over, and the same evidence would be presented in each case. Accordingly, I find that a common nucleus of operative facts exists in this case and that the common questions of law and fact predominate over those issues requiring individualized proof. The individual questions presented can be resolved in separate proceedings. *See Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Korn*, 456 F.2d 1206, 1212; *Union Carbide & Carbon Corp. v. Nisley*, 300 F.2d 561, 589 (10th Cir.1961), *cert. dismissed*, 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46 (1962).

### 6. Superiority of the Class Action

The last prerequisite for class certification is that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). GM asserts that arbitration is a better alternative to class action in this case. I am convinced, however, that a class action would be far superior to any other method of adjudicating this controversy, including arbitration. First, relitigation of the same issues and presentation of the same evidence in hundreds of individual actions or arbitration proceedings would be grossly inefficient and wasteful of judicial resources. Second, maintenance of individual actions would be prohibitively expensive. Many of the crucial issues in this case will require substantial discovery, expert testimony, and trial time, all of which would render uneconomical individual actions. *See In Re Cadillac*, 461 A.2d 736, 748. For these reasons, I find that the superiority requirement has been met in this case.

### 7. Due Process

Finally, I reject GM's contention that certification of a class action in this case would violate its right to due process of law under the Fourteenth Amendment by preventing it from asserting individual defenses such as treatment of the vehicles by each of the plaintiffs (*if relevant*), and actual reliance on GM's express warranties and representations. When presented with this precise argument in *In Re Cadillac*, 461 A.2d 736, the court stated, and I agree, that

> [t]hat assertion misconstrues the nature of class action proceedings. Certification as a class action does not limit a defendant's right to pursue any defense on any of a plaintiff's claims. In the present case, for example, certification merely permits litigation of common issues on a class basis before litigation of individualized issues.

IT IS THEREFORE ORDERED THAT:

1. Plaintiffs' Motion for Class Cetification is GRANTED in part. The defined class is certified, subject to later modification, if necessary. Issues requiring individualized proof will be determined in separate proceedings, the form of which will be determined at a later date.

2. Plaintiffs shall give notice to class members in accordance with Fed.R.Civ.P. 23(c)(2).