**Timothy B. DAVENPORT, Jr., a minor by his parents and natural guardian Trayce FOWLKES and Trayce Fowlkes on her own behalf, et al.**

v.

**GERBER PRODUCTS COMPANY, and Evenflo Products Company.**

**Civ. A. No. 87–3198.**

United States District Court,
E.D. Pennsylvania.

March 31, 1989.

Albert J. Slap, Lorraine J. Zwolak, Slap, Williams & Cuker, Philadelphia, Pa., Herbert B. Newberg, Philadelphia, Pa., for plaintiffs.

Carl J. Valore, Stephen C. Rubino, pro hac vice, Valore, Westmoreland, Gould, Vesper & Schwartz, Northfield, N.J., Joseph B. White, pro hac vice, Valore, McAllister, Westmoreland, Vesper & Schwartz, West Atlantic City, N.J., for other plaintiffs.

Louis E. Bricklin, Philadelphia, Pa., for Gerber Products Co.

Francis J. Deasey, Deasey, Mahoney & Bender, Ltd., Philadelphia, Pa., for Evenflow Products Co.

MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before the court is the motion of plaintiffs, Timothy D. Davenport, Jr., his mother, Trayce Fowlkes, Anna Mae Stocklin, and her parents, Warren and Anna Stocklin for class certification. Plaintiffs are seeking the certification of a voluntary class, pursuant to Fed.R.Civ.P. 23(b)(3) for their claims for damages, and a mandatory class, pursuant to Fed.R.Civ.P. 23(b)(1)(A) and 23(b)(2) for their claims for injunctive relief.

## BACKGROUND

The named plaintiffs seek to maintain this action as a class action on behalf of the following defined class:

> All minor children suffering from or who have been injured by Nursing Bottle Syndrome and the parents of such injured children, or persons in loco parentis, who presently reside in the Commonwealth of Pennsylvania.

Plaintiffs' Motion Memorandum at 1.

Plaintiffs seek damages arising from personal injuries allegedly caused by defendants' infant-feeding bottles and to compel the defendants to issue warnings on such bottles. Specifically, plaintiffs seek class certification only on the issue of defendants' "duty to warn" of the condition known as "Nursing Mouth Syndrome."[1] I will address the problems that are presented by class certification.

## DISCUSSION

### I. *The Requirements of Rule 23*

■ In order to mandate a class action under Rule 23, the action must meet the prerequisites of Rule 23(a) and one additional set of alternative requirements under Rule 23(b). *In re Northern District of California, Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, 854 (9th Cir.1982), *cert. denied*, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). Although plaintiffs' arguments focus in large part on the criteria of Rule 23(b), I will address at least briefly each of the prerequisites of Rule 23(a) as applied to this case before reaching the central concerns that are posed by the requirements of Rule 23(b)(3).

#### A. Rule 23(a)
##### 1. *Numerosity*

Rule 23(a)(1) mandates that the proposed class be "so numerous that joinder of all members is impracticable." Counsel for plaintiffs generally aver that the proposed class is estimated to contain at least one thousand members. On the other hand, excluding the named plaintiffs, plaintiffs' counsel do not identify by name and address any other claimants. *In re Tetracycline Cases*, 107 F.R.D. 719, 728 (W.D.Mo. 1985). Certainly to the extent that the affidavit of expert Dr. Nelson attests to the fact that each year more than one thousand children are treated at Children's Hospital of Pennsylvania for Nursing Mouth Syndrome, can this court find that the "numerosity" requirement is met. For the moment, I will conclude that the numerosity prerequisite has been established.

##### 2. *Commonality*

Rule 23(a)(2) mandates that "questions of law or fact common to the class" be present. Plaintiffs, correctly assert that a single common question might be sufficient to satisfy Rule 23(a)(2). *See e.g., In re "Agent Orange Product" Liability Litigation*, 818 F.2d 145, 166–67 (2d Cir.1987) (citing *Port Authority Police Benevolent Ass'n. v. Port Authority of New York & New Jersey*, 698 F.2d 150, 154 (2d Cir.1983) ("Since plaintiff has satisfied the requirement of *a common question* of law or fact, Rule 23(a)(2), the denial of class certification must be reversed.")), *cert. denied*, —— U.S. ——, 108 S.Ct. 695, 98 L.Ed.2d 647, —— U.S. ——, 108 S.Ct. 2899, 101 L.Ed.2d 932 (1988). Plaintiffs contend that there are various common questions of law and fact in this action. Common questions of fact asserted by plaintiffs are:

(1) when the defendant knew or had reason to know of [Nursing Mouth Syndrome];

(2) whether the defendants' products were dangerous as marketed, without warnings, and caused plaintiffs' and

---

1. This condition has been described as
    [A] condition of cavities in a child's baby teeth that are usually seen in the upper front teeth first and progress over time to the child's upper back teeth, and if left over more time will progress to the child's lower back teeth. But the hallmark is that the lower front teeth will not be affected.

*See* Deposition of Linda Pollack Nelson, D.M.D. at 17. "Nursing Mouth Syndrome" has been variously referred to as "Baby Bottle Tooth Decay" and "Nursing Caries." *See* Defendants' Brief in Opposition at 2, n. 1 and the citations therein.

class members' injuries; and (3) whether these products could have been safely distributed with appropriate warnings. Plaintiffs' Motion Memorandum at 9.

Common questions of law asserted by plaintiffs are:

(1) whether the defendants had a duty to warn parents or infant caretakers about

[Nursing Mouth Syndrome];

(2) whether the defendants breached this duty; and

(3) whether the failure of a parent or caretaker to practice optimal dental practices can be imputed to their child and undermine the child's ability to gain full compensation from the defendants herein.

*Id.* I note that the Third Circuit has liberally applied the Rule 23(a)(2) commonality requirement. The Court of Appeals in *In re School Asbestos Litigation,* 789 F.2d 996, 1010 (3d Cir.), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117, 479 U.S. 915, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986) has stated:

We find ourselves in substantial agreement with the reasoning of the Court of Appeals for the Fifth Circuit which, in upholding a (b)(3) class action of 893 asbestos personal injury claims, noted that the 'threshold of commonality is not high.'

(citing *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468 (5th Cir.1986)). I accept that there are common questions of law and fact running through this action. The primary legal question presented is whether defendants, if any, had a duty to warn of the potential harm of Nursing Mouth Syndrome. Moreover, it must be conceded that use of the feeding bottle is a fact common to all of the plaintiffs' claims. Therefore, it could be reasonably argued, and plaintiffs not surprisingly do argue, that commonality, within a permissive application of Rule 23(a)(1), is present.

### 3. *Typicality*

The third Rule 23(a) prerequisite mandates that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "[C]laims [are considered] typical when the 'essence' of the allegations concerning liability, and not the particularities, suggest adequate representation of the interests of the proposed class members." *Peil v. Speiser,* 97 F.R.D. 657, 659 (E.D.Pa.1983) (quoting *Peil v. National Semiconductor Corp.,* 86 F.R. D. 357, 371 (E.D.Pa.1980)). Another court defined a claim as typical "if it gives rise to the claims of other class members and is based on the same legal theory." *Paskel v. Heckler,* 99 F.R.D. 80, 84 (E.D.Pa.1983) (citation omitted). Concededly, the central argument raised by plaintiffs that would be common to all putative class members rests on strict liability and negligence theories regarding defendants' alleged failure to issue an adequate warning. However, defendants' attack on the typicality of named plaintiffs claims in this action is well taken. The thrust of that attack addresses the typicality of the claims of named class members whose burden of proof may be higher than the burden of other class members. Defendants argue persuasively that certain members of the group of parents of injured children will need to overcome a higher burden of proof because they were warned by their physicians of "Nursing Mouth Syndrome." These members may encounter severe difficulties proving liability in light of their particular burden to prove a duty, if any, a breach of that duty, and causation. Plaintiffs may additionally be required to overcome a defense of comparative fault. This set of problems recurs throughout this action.

In an instructive bench opinion delivered by Judge Weinstein in a related action the suggestion is made that certification of this action through subclasses would remedy some of the referred to problems regarding the presence of commonality and typicality in this action. *See Casey v. Evenflo Products Co.,* No. L–052199–86, Transcript at 65 (N.J.Super.Ct.Law Div. June 16, 1988). I will address the problems posed by the typicality and commonality issues in this certification in more depth *infra* in section B. For present purposes, I will conclude typicality requirements, in the minimal sense, have been met.

#### 4. *Adequacy of Representation*

Rule 23(a)(4) maintains that "the representative parties will fairly and adequately protect the interests of the class." "This prerequisite embodies concerns which fall into two categories: that the representatives and their attorneys will competently, responsibly and vigorously prosecute the suit, and that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir.1977) (citations omitted), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). With respect to the first aspect of this prerequisite no concern is raised in my mind. Plaintiffs' counsel assure the court that counsel are well-qualified and experienced trial lawyers in general and complex litigation. Plaintiffs' Motion Memorandum at 11. I have no reason to disbelieve this to be the case. The second aspect of this prerequisite is ingeniously challenged by defendants. Defendants raise the argument that a conflict of interest exists between the parent class members and the infant members to the extent that the infant plaintiffs may have a cause of action against their parents for lack of supervision during bottle feeding if it is found that the parents knew about Nursing Mouth Syndrome and therefore acted willfully and wantonly. *See* Defendants' Response at 55. Without reaching the merits of defendants' argument, I note that this court is equipped by Rule 23(d) to issue orders directed at strengthening the adequacy of representation. In any event, I conclude that adequacy of representation is not an appropriate ground upon which to deny plaintiffs' certification.

#### B. Rule 23(b)(3)

Rule 23(b)(3) requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

In order to reach this finding, Rule 23(b) directs the court to consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Taking these considerations together, I must find that the issues common to the class members predominate and present a superior method of adjudicating plaintiffs' claim in order to certify.

Plaintiffs suggest that this court certify a "hybrid" class under 23(b)(3) "for certain [damages] claims, allowing class members to opt out, while creating a ... (b)(2) class for other [injunctive] claims from which opt-outs are not permitted, pursuant to Rule 23(c)(4)(A)." Plaintiffs' Motion Memorandum at 21 (citation omitted). I am persuaded by the analysis set forth by the *In re Tetracycline Cases* court on the effects of Rule 23(c)(4)(A) on Rule 23 generally:

The admitted effect of this determination is to lessen—for Rule 23(c)(4)(A) purposes—the importance of the predominance requirement, as such. That may be viewed, however, as offset by a corresponding increase in the importance accorded Rule 23(b)'s requirement of superiority, a requirement which is unaffected by Rule 23(c)(4)(A). In fact, in practical working terms I view the predominance requirement in connection with a Rule 23(c)(4)(A) request, as subsumed to a considerable extent within that 'superiority' requirement.

107 F.R.D. at 727. I remain mindful of traditional analyses of Rule 23(b) criteria while taking into consideration the lessening impact on the *predominance* requirement effected by Rule 23(c)(4)(A).

The most pressing concerns presented by certification of the defined class, even under the flexibility afforded by Rule 23(c)(4)(A), is that certification in this case

would prove unmanageable and would not serve any of the judicial efficiency and economy concerns that underpin Rule 23. Even if the class were certified on the duty to warn and breach of duty issues, individual issues relating to each parent's knowledge of the risks and other possible causes for the infant's injury would remain unresolved. The jury in every individual trial would have to examine the knowledge of the defendant manufacturer and weigh the manufacturer's relative fault against the knowledge and fault of the juice manufacturer and any other potential wrongdoer such as the child's physician. In addition, the comparative fault of the parents would need to be weighed on an individual basis. In sum, certification on the narrow legal issue presented by plaintiffs does not advance this litigation in light of the fact that virtually all of the issues related to liability would remain unresolved on an individual basis. *See Brown v. Southeastern Pennsylvania Transportation Authority,* Nos. 86–2229, 86–4037, 86–5886, slip op., 1987 WL 9273 (E.D.Pa. April 9, 1987), 1987 U.S. Dist. Lexis 5095 (Rule 23(b)(3) certification of class of plaintiffs claiming personal injuries associated with handling PCBs rejected on grounds that any determination of causation requires individualized . inquiries); *see also In re School Asbestos Litigation,* 789 F.2d at 1010 (determining causation in a property damage class action is more straightforward than in a personal injury class action). The manageability at trial concerns raised by the presentation of evidence on the question of the adequacy of the various warnings defendants allege were provided in various fashions at various times and the interplay of that problem with a single jury's undertaking the task of allocating comparative fault as between plaintiffs or various subclasses and defendants is insurmountable.

Finally, the use of special verdicts and collateral estoppel represent alternative methods of limiting claims or defenses in this action without exerting the overwhelming manageability pressures class adjudication imposes. *See In re Tetracycline Cases,* 107 F.R.D. at 735.

## II. *Injunctive Relief*

■ Plaintiffs' counsel seek certification of a mandatory class pursuant to Fed.R. Civ.P. 23(b)(2) and 23(b)(1)(A). The final injunctive relief sought is the placement of a warning regarding Nursing Mouth Syndrome on defendants' related products for infants.

Rule 23(b)(2) permits certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." However, an action for money damages may not be appropriate if the final relief relates exclusively or predominantly to money damages. *See* Fed.R. Civ.P. 23(b)(2) advisory committee's notes; *see also In re School Asbestos Litigation,* 789 F.2d at 1008. The final relief sought by plaintiffs in this action is money damages. Money damages is the only adequate method by which plaintiffs could be recompensed. Accordingly, certification of a mandatory class pursuant to Rule 23(b)(2) is denied.

Rule 23(b)(1)(A) permits class certification if "inconsistent or varying adjudications with respect to individual members of the class ... would establish incompatible standards of conduct for the party opposing the class." The fact that some of the plaintiffs may prevail against the defendants in individual actions and some of the plaintiffs may not prevail is insufficient grounds to invoke Rule 23(b)(1)(A). *See In re Bendectin Products Liability Litigation,* 749 F.2d 300, 305 (6th Cir.1984) (vacating certification of class of plaintiffs in massive products liability case involving use of the prescription drug Bendectin). Plaintiffs have failed to show that certification pursuant to Rule 23(b)(1)(A) is appropriate.

An order follows.

## *ORDER*

AND NOW, this 31st day of March, 1989, in consideration of the motion of plaintiffs, Timothy D. Davenport, Jr., his

mother, Trayce Fowlkes, Anna Mae Stocklin, and her parents, Warren and Anna Stocklin for class certification of a voluntary class filed pursuant to Fed.R.Civ.P. 23(b)(3) for their claims for damages and a mandatory class, filed pursuant to Fed.R.Civ.P. 23(b)(1)(A) and 23(b)(2) for their claims for injunctive relief, the response of defendants Gerber Products Company and Evenflo Products Company thereto, for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. The motion of plaintiffs to certify a voluntary class pursuant to Fed.R.Civ.P. 23(b)(3) for damages is DENIED.

2. The motion of plaintiffs to certify a mandatory class pursuant to Fed.R.Civ.P. 23(b)(1)(A) and 23(b)(2) for injunctive relief is DENIED.